**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

| | |
|---|---|
| **KELLY FILLION-FRYE** and **ROBERT DOMAN**, individually and on behalf of all others similarly situated, | CASE NO. 2:17-CV-00118-UA-CM |
| *Plaintiffs*, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| *v.* | |
| **THE H.O.P.E. PROGRAM, LLC,** a Florida limited liability company, | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Kelly Fillion-Frye ("Fillion-Frye" or "Plaintiff Fillion-Frye") and Plaintiff Robert Doman ("Doman" or "Plaintiff Doman") bring this First Amended Class Action Complaint and Demand for a Jury Trial ("Complaint") against Defendant The H.O.P.E. Program, LLC ("Defendant" or "Hope Program") to stop Defendant's practice of making unsolicited autodialed telephone calls and/or text messages to the cellular telephones of consumers nationwide and to obtain redress, including injunctive relief, for all persons injured by its conduct. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

///

///

1

## NATURE OF THE ACTION

1.      Defendant runs and operates several services that assist consumers in repairing their consumer credit and assists them in making consumer purchases including homes and automobiles. It combines the removal of bad credit with the addition of good credit in order to help consumers increase their credit score thereby allowing them to purchase consumer products.[1]

2.      Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote Defendant's business and services, namely assisting consumers with bad credit with the home-and-automobile purchasing process, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the making of repeated unsolicited autodialed telephone calls and/or text messages to consumers' cellular telephones without consent -- all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

3.      By making the autodialed telephone calls and/or text messages at issue in this Complaint, Defendant caused Plaintiffs and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation, annoyance, nuisance and invasions of privacy that result from the receipt of such calls and/or text messages, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls and/or text messages. Furthermore, the calls interfered with Plaintiffs' and the other Class members' use and enjoyment of their cellular telephones, including the related data, software, and hardware components.

---

[1] https://www.linkedin.com/company/3607595

Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular data and minutes.

4.      The TCPA was enacted to protect consumers from unsolicited telephone calls and text messages like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiffs file the instant lawsuit and seek an injunction requiring Defendant to cease all unsolicited telephone calling and text messaging activities to consumers as complained of herein and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

5.      Plaintiff Kelly Fillion-Frye is a natural person and citizen of the State of Georgia.

6.      Plaintiff Robert Doman is a natural person and citizen of the State of Arkansas.

7.      Plaintiff Robert Doman and Plaintiff Kelly Fillion-Frye will be collectively referred to herein as "Plaintiffs."

8.      Defendant The H.O.P.E. Program, LLC is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business located at 25501 Trost, #876, Bonita Springs, Florida.  Defendant filed a Florida Limited Liability Company Annual Report with the Florida Secretary of State on March 8, 2016.[2]

---

[2] http://search.sunbiz.org/Inquiry/CorporationSearch/GetDocument?aggregateId=flal-l15000050070-7bc063ca-683a-48f2-ac93-fbbd674a555e&transactionId=l15000050070-e554c635-e2fd-4b0a-a2d0-ffaccd3a0027&formatType=PDF

## JURISDICTION AND VENUE

9.      This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a federal statute.

10.      The Court has personal jurisdiction over Defendant because it solicits significant business in this District, has entered into business to business contracts in this District, the calls and/or text messages at issue occurred in and/or emanated from this District, and the unlawful conduct alleged in this Complaint occurred in and/or emanated from this District.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant does business in this District and the causes of action arose, in substantial part, in this District. Venue is additionally proper as Defendant resides in this District.

## COMMON FACTUAL ALLEGATIONS

12.      In Defendant's ordinary course of business, it contacts or attempts to contact prospective customers in attempts to sell and/or market its business and services.

13.      As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

14.      Yet in violation of this rule, Defendant fails to obtain any prior express written consent to make these autodialed calls and text messages to cellular telephone

numbers.[3]

15.     Consumer complaints about Defendant's invasive and repetitive calls are legion. As a sample, consumers have complained as follows:

- These people just wont stop calling or take my number off there list.  Ive spoken with Shelia, ryan, dave, and now operator and still nothing done![4]

- They wont remove u from the call list then ( report them at the national do not call list online or 1-888-382-1222 if they continue to call then co. can be fined! Thank u Bleckley police for info![5]

- They have 4 scams going about clearing credit, buying homes, internet, and more services im sick of them calling me for fake [****]![6]

- [A]sked to be removed from call list but rep Ryan said press charges against the company for harassment calling with cochran police dept, and this company said we will continue to call if we please![7]

- Harassing me[8]

- Scam stop calling me[9]

16.     In placing the calls and text messages that form the basis of this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS") in violation of the TCPA. Specifically, the hardware and software used by Defendant has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without

---

[3] In the FCC's 2003 Report and Order, it concluded that text messages are deemed to be calls under the purview of the TCPA.

[4] http://www.whitepages.com/phone/1-478-298-4062

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

human intervention.  Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

17.     In fact, Defendant itself makes it known that it uses dialer equipment on its own website:



"[b]y submitting this form, I agree that The H.O.P.E. Program, including its affiliates, may contact me regarding its programs and offers via email or telephone *using automated technology* to any wireless number I provide in order to best help me down the path to home ownership and/or credit repair[10]

This "automated technology" constitutes as an ATDS under the TCPA.

18.     Furthermore, Defendant calls and/or text messages these customers who

---

[10] *See* http://hopetoown.com/?subone=2&subtwo&transaction=1026b5f28eee2a481e8fa5e505418f

have no "established business relationship" with Defendant.

19.     When placing these calls to consumers, Defendant failed to get prior express written consent as required by the TCPA from cellular telephone owners/users to make such calls and/or text messages.

20.     Finally, even when consumers try to opt out of future calls by requesting to never be called again, Defendant continues to call them.

21.     Defendant knowingly made (and continues to make) telemarketing calls without the prior express written consent of the call recipients and knowingly continues to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiffs and other members of the putative Classes but also intentionally and repeatedly violated the TCPA.

**FACTS SPECIFIC TO PLAINTIFF FILLION-FRYE**

22.     In or around September of 2016 Plaintiff Fillion-Frye started to receive approximately three-months worth of harassing telemarketing calls from The Hope Program through November of 2016.

23.     The Hope Program utilized the telephone number 478-298-4062 to place the unwanted calls at issue.

24.     The Hope Program utilized SMS Shortcode 94298 to send the unwanted text message at issue.

25.     When Plaintiff Fillion-Frye would answer The Hope Program's harassing calls on her cellular telephone, she would hear a pause for a few seconds until its representative came on the line, a hallmark sign that The Hope Program was and is using an ATDS.

7

26.     On one particular occasion, during The Hope Program's campaign of calls to Plaintiff Fillion-Frye, Plaintiff Fillion-Frye received a voicemail from The Hope Program in which she heard one of its agents instruct another one of its agents to keep calling Plaintiff no matter what.

27.     On November 19, 2016 The Hope Program again contacted Plaintiff Fillion-Frye in an effort to solicit its business or services.  On this particular call, she informed The Hope Program's agent, Ryan, to cease contacting her.

28.     On at least one of the calls that Plaintiff Fillion-Frye answered, The Hope Program indicated that the purpose of the call was to solicit her to sign up for one of its nine services.

29.     Despite Plaintiff Fillion-Frye's repeated requests for the autodialed calls to her cellular telephone to stop, The Hope Program continued to call her from its -4062 number.

30.     Worse yet, Defendant continued its harassing solicitation campaign when it sent or caused to be sent a text message from SMS shortcode 94298 to Plaintiff Fillion-Frye's cellular telephone number.  The text message read as follows, "Buy a Home with HOPE's help! A $135,000 Home is only $635/mo EVEN with Bad Credit! Low Down or Zero Down! Get Approved here at http://goo.gl/91zWXV[.]

31.     After receiving Defendant's unwanted text message, Plaintiff replied, "Stop."  The subsequent text message read as follows, "You are unsubscribed.  No more messages will be sent.  Reply HELP or call (800) 370-6254 for help."

32.     The text message sent to Plaintiff Fillion-Frye on February 18th, 2017 at 1:35 p.m. is reproduced below:



///

///

///

///

///

///

///



33.     Upon information and good-faith belief, Defendant owns and/or operates telephone number 800-370-6254.

34.     Plaintiff Fillion-Frye never consented in writing or otherwise to receive autodialed telephone calls or text messages on her cellular telephone from The Hope Program.

35.     Plaintiff Fillion-Frye does not have a relationship with The Hope Program, has never provided her telephone number to The Hope Program, and has never requested that The Hope Program place calls or send text messages to her or offer its services.

Simply put, Plaintiff Fillion-Frye has never provided any form of prior express written consent to The Hope Program to place calls and/or send text messages to her and has no business relationship with The Hope Program.

## FACTS SPECIFIC TO PLAINTIFF DOMAN

36.     On March 17, 2017, at approximately 11:20 a.m., Plaintiff Doman began to receive a series of unsolicited text messages from The Hope Program.

37.     The Hope Program utilized SMS shortcode 82219 to send the unwanted text messages at issue.

38.     The two March 17, 2017 text messages were the same.  They reach read, "Looking for a New Car? How does Zero Down & under $138/mo sound? Even with Credit issues! Trade-ins ok, any 2017 make & model here"

39.     An image of the above text messages received by Plaintiff Doman is reproduced below:



40.     On March 20, 2017, Plaintiff Doman received four more unwanted solicitation text messages.  The first two read, "We will respond shortly.  For immediate help please call 800-370-6254. To stop receiving messages please reply "stop.""

41.     The third and fourth March 20, 2017 messages read, "Still looking for a New Car with Zero Down & under $138/mo? Even with Credit Issues! Trade-ins accepted, any 2017 make & model here"

42.     Images of the above text messages received by Plaintiff Doman are reproduced below:



43.     Upon information and good-faith belief, Defendant owns and/or operates SMS shortcode 82219.

44.     Moreover, upon information and good-faith belief, an agent of The Hope Program answers the telephone when the 800-370-6254 is called.

45.     Plaintiff Doman never consented in writing or otherwise to receive

autodialed text messages on his cellular telephone from The Hope Program.

46.     Plaintiff Doman does not have a relationship with The Hope Program, has never provided his telephone number to The Hope Program, and has never requested that The Hope Program send text messages to him or offer its services. Simply put, Plaintiff Doman has never provided any form of prior express written consent to The Hope Program to send text messages to him and has no business relationship with The Hope Program.

47.     The Hope Program at all times is and was aware that the above-described autodialed telephone calls and text messages were and are being made to consumers like Plaintiffs who had not consented to receive them.

48.     By making unauthorized autodialed calls and sending text messages to consumer's cellular telephones as alleged herein, The Hope Program has caused consumers actual, concrete harm and annoyance. In the present case, a consumer could be subjected to many unsolicited autodialed telephone calls, as The Hope Program's opt-out system does not work.

49.     In order to redress these injuries, Plaintiffs, on behalf of themselves and the Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed telephone calls and/or text messages to cellular telephones.

50.     On behalf of the Classes, Plaintiffs seek an injunction requiring The Hope Program to cease all unauthorized autodialed telephone calling and/or text messaging activities, declaratory relief establishing that The Hope Program's calls and text messages violated the TCPA, and an award of statutory damages to the Class members, together

with costs and reasonable attorneys' fees.

## CLASS ALLEGATIONS

51.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure

23(a), (b)(2), and (b)(3) on behalf of themselves and three Classes defined as follows:

> **Autodialed No Consent Class**: All persons in the United States who from
> four years prior to the filing of the initial complaint in this action: (1)
> Defendant (or a third person acting on behalf of Defendant) called; (2) on
> the person's cellular telephone number; (3) for the purpose of marketing
> products and services; and (4) for whom Defendant claims it obtained
> prior express written consent in the same manner as Defendant claims it
> obtained prior express written consent to call the Plaintiff.

> **Autodialed Stop Call Class**: All persons in the United States who from
> four years prior to the filing of the initial complaint in this action: (1)
> Defendant (or a third person acting on behalf of Defendant) called, (2) on
> the person's cellular telephone number, (3) for the purpose of marketing
> products and services, (4) after the person informed Defendant that s/he no
> longer wished to receive calls from Defendant.

> **Text Message No Consent Class:** All persons in the United States who
> from a date four years prior to the filing of the initial complaint in this
> case through the present: (1) Defendant (or a third person acting on behalf
> of Defendant) sent text messages, (2) to the person's cellular telephone
> number, and (3) for whom Defendant claims it obtained prior express
> written consent in the same manner as Defendant claims it supposedly
> obtained prior express written consent to send automated text messages to
> the Plaintiffs.

52.     The following people are excluded from the Classes: any Judge or

Magistrate presiding over this action and members of their families; (2) Defendant, its

subsidiaries, parents, successors, predecessors, and any entity in which the

Defendant or its parents have a controlling interest and its current or former employees,

officers and directors; (3) persons who properly execute and file a timely request for

exclusion from the Classes; (4) persons whose claims in this matter have been finally

adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's

counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiffs anticipate the potential need to amend the Class Definitions following the completion of class discovery regarding the size and scope of the Classes and the manner by which Defendant claims it obtained prior express consent.

53.     **Numerosity**: The exact size of the Classes is unknown and not available to Plaintiffs at this time, but individual joinder is impracticable. On information and belief, Defendant made telephone calls and/or text messages to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records and by reference to objective criteria.

54.     **Commonality**: There are several questions of law and fact common to the claims of Plaintiffs and the Classes on which every class member's claim will either succeed or fail, and which will be proven using common evidence. Such common questions for the Classes include, without limitation:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether Defendant systematically made telephone calls and/or text messages to individuals who did not provide Defendant and/or its agents with their prior express written consent to receive such phone calls;

(c)     Whether Defendant made the calls and/or text messages with the use of an ATDS;

(d)     Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct; and

(e)     Whether Defendant systematically made telephone calls to consumers after they explicitly asked not to be called by Defendant.

55.     **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Classes. Plaintiffs are members of the Classes, and if Defendant violated the TCPA to call and/or text message Plaintiffs then it violated the TCPA to call and/or text message the other class members. Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiffs and the Classes.

56.     **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

57.     **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Classes as respective wholes. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiffs.

58.     **Predominance:** The common questions of law and fact set forth above predominate over any individual issues. Whether Defendant properly obtained prior express written consent to call and/or send text messages and whether Defendant used an ATDS go to the very heart of the case and are facts on which all Class members' claims

hinge. As such, the common issues predominate over any supposed individualized issues.

59.     **Superiority and Manageability**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiff Fillion-Frye and the Autodialed No Consent Class)**

60.     Defendant made unsolicited and unwanted autodialed telephone calls to a telephone number belonging to Plaintiff Fillion-Frye and the other members of the Autodialed No Consent Class—without their prior express written consent.

61.     Defendant's calls were made for the purpose of marketing Defendant's business and services, which consist of assisting consumers with financing and purchasing consumer products, including homes and automobiles.

62.    At no time did Defendant obtain prior express written consent that disclosed to the called party that the called party consented to be called with an automatic telephone dialing system or pre-recorded voice or that providing such consent was not a condition (direct or indirect) of any purchase of any goods or services.

63.    Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that made the telephone calls to Plaintiff Fillion-Frye and other members of the Autodialed No Consent Class simultaneously and without human intervention.

64.    By making unsolicited telephone calls to Plaintiffs and members of the Autodialed No Consent Class's cellular telephones without prior express written consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

65.    As a result of Defendant's unlawful conduct, Plaintiff Fillion-Frye and the members of the Autodialed No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

66.    In the event that the Court determines that Defendant's conduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff Fillion-Frye and the other members of the Autodialed No Consent Class.

///

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq*.**
**(On behalf of Plaintiff Fillion-Frye and the Autodialed Stop Call Class)**

67.     Plaintiff Fillion-Frye incorporates the foregoing allegations as if fully set forth herein.

68.     Defendant made unsolicited and wanted telemarketing calls to telephone numbers belonging to Plaintiff Fillion-Frye and the other members of the Autodialed Stop Call Class on their cellular telephone *after* the person had informed Defendant that he or she no longer wished to receive such calls from Defendant.

69.     Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

70.     By making unsolicited telephone calls to Plaintiff Fillion-Frye and members of the Autodialed Stop Call Class's cellular telephones after they requested to no longer receive calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to call them without prior express written consent.

71.     As a result of Defendant's unlawful conduct, Plaintiff Fillion-Frye and the members of the Autodialed Stop Call Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

72.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of

statutory damages recoverable by Plaintiff Fillion-Frye and the other members of the Autodialed Stop Call Class.

### THIRD CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs the Text Message No Consent Class)**

73.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

74.     Defendant sent autodialed text messages to cellular telephone numbers belonging to Plaintiffs and other members of the Text Message No Consent Class without first obtaining prior express written consent to receive such autodialed text messages.

75.     Defendant sent the text autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendant's autodialer disseminated information *en masse* to Plaintiffs and other consumers.

76.     By sending the unsolicited text messages to Plaintiffs and the cellular telephones of members of the Text Message No Consent Class without their prior express written consent, and by utilizing an automatic telephone dialing system to make those calls/text messages, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

77.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiffs and the other members of the Text Message No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of

$500.00 in damages for each violation of such act.

78.     In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Text Message No Consent Class.

## PRAYER FOR RELIEF

1.     WHEREFORE, Plaintiffs, individually and on behalf of the Classes, pray for the following relief:

2.     An order certifying the Classes as defined above, appointing Plaintiff Fillion-Frye and Plaintiff Doman as the representatives of the Classes and appointing their counsel as Class Counsel;

3.     A declaratory judgment declaring that Defendant's calls and text messages violated the TCPA, that Defendant's equipment constitutes an automatic telephone dialing system under the TCPA, that Defendant failed to obtain prior express written consent to call and/or text message Plaintiffs or any of the Class member and that Defendant failed to honor stop-call requests to Plaintiff Fillion-Frye and the members of the Autodialed Stop Call Class;

4.     An award of actual and statutory damages, to be trebled in the event the Court finds that Defendant has acted knowingly and willfully, to be paid into a common fund for the benefit of the Class Members;

5.     An injunction requiring Defendant and its agents to cease all unsolicited telephone calling and text messaging activities, to honor do not call requests, to provide a domestic number for opting out, and otherwise protecting the interests of the Classes;

6.      An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

7.      An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

8.      An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established and trained its personnel on the use of an internal Do Not Call list;

9.      An award of reasonable attorneys' fees and costs to be paid from the common fund; and

10.      Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: April 7, 2017                    **KELLY FILLION-FRYE** and **ROBERT DOMAN**, individually and on behalf of all others similarly situated,

By: _s/Stefan Coleman_____
Plaintiffs' Attorney

Stefan Coleman
law@stefancoleman.com
Law Offices of Stefan Coleman, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, Florida 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946
*Attorney for Plaintiffs and the Classes*

## <u>CERTIFICATE OF SERVICE</u>

I, Stefan Coleman, an attorney, hereby certify that on April 7, 2017, I caused the above and foregoing papers to be served by sending such papers to all counsel of record via electronic mail.

<u>s/Stefan Coleman</u>